RECEIVED

MAR 3 0 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY: _____

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

---

ELLIOTT T. GRAY

versus

TASER INTERNATIONAL, INC.,
BIENVILLE PARISH SHERIFF, CLINT
SMITH, MIKE ROWLAND AND
CR DAVIS

CIVIL ACTION NO. 11-1802
JUDGE TOM STAGG

---

### MEMORANDUM RULING

Before the court is an unopposed motion for summary judgment filed by one
of the defendants, Taser International, Inc. ("Taser"), in the above-captioned matter.
See Record Document 17.  For the reasons set forth below, Taser's motion for
summary judgment is **GRANTED**.

# I.  BACKGROUND

## A.    Facts.[1]

In September of 2010, Elliott T. Gray ("Gray") was a convicted felon who was out of jail on parole and who had several outstanding warrants for his arrest. For nearly ten months before September 3, 2010, deputies with the Bienville Parish Sheriff's Office investigated Gray's involvement in the distribution of illegal drugs in Bienville Parish.  Deputies obtained the assistance of a cooperating individual and arranged for an undercover officer, Deputy Mike Rowlan ("Deputy Rowlan"), to purchase six hundred dollars worth of cocaine and prescription narcotics from Gray ("the buy-bust").  The confidential informant specifically warned Deputy Rowlan that Gray "was armed with a 9 millimeter semi-automatic pistol" and that Gray "would run from police and resist arrest."  Record Document 17, Ex. 1 at 1 (Affidavit of Deputy Rowlan).  In light of this information, Deputy Rowlan was

---

[1]Local Civil Rule 56.2 of the Uniform District Court Rules requires that "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried."  The rule further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."  The plaintiff did not controvert the statement of material facts filed by Taser.  Thus, all material facts set forth in Taser's statement have been deemed admitted, for purposes of this motion, and the fact section of this opinion is drawn largely from Taser's filing per Local Rule 56.2.

equipped with a Taser X26 Electronic Control Device ("Taser ECD").  An arrest team, consisting of several officers, were positioned out of sight.

On September 3, 2010, at approximately 2:00 a.m., Gray arrived for the buy-bust in the front passenger seat of a car driven by Kristen Lard.  The driver stopped the car and turned off the lights, but kept the motor running.  Deputy Rowlan approached Gray's front passenger window, and Gray asked Deputy Rowlan if he had the money.  Deputy Rowlan responded "yes" and asked Gray if he had the cocaine.  When Gray reached to his left, toward the center console of the car, Deputy Rowlan unholstered his Taser ECD, pointed it at Gray, told Gray he was "under arrest," and ordered Gray to show his hands.  When Gray refused to comply with that order, Deputy Rowlan deployed his Taser ECD.  Both Taser ECD probes deployed properly.  One probe attached to Gray's right upper arm and the other probe attached to his right chest area.  Deputy Rowlan allowed his Taser ECD to cycle for five seconds.  When the five second cycle ended, Gray tried again to reach toward the car console, instead of showing his hands.  Deputy Rowlan again pulled the trigger of his Taser ECD, allowing it to cycle for another five seconds.  During that five second cycle, the Taser ECD functioned properly and other law enforcement personnel were able to reach Gray and get him under control.  When the arrest team removed Gray from the car, Deputy Rowlan released the spent

3

cartridge of his Taser ECD and dropped it to the ground.  Deputy Rowlan did not deploy his Taser ECD again.

After his arrest, Gray complained about being short of breath and feeling like he was going to pass out.  The dispatcher was contacted and an ambulance arrived a short time later.  When the paramedics arrived, Gray repeated his initial complaint about shortness of breath to Paramedic Joshua C. Maxwell ("Paramedic Maxwell").  Paramedic Maxwell examined Gray and Gray was breathing normally.  Gray told Paramedic Maxwell that he was doing fine and he did not need medical attention. Paramedic Maxwell removed the two ECD probes and medically cleared Gray to be transported to jail.

Prior to September 3, 2010, Deputy Rowlan completed a class with a certified instructor and became user-certified on a Taser ECD.  During that class, Deputy Rowlan personally experienced a Taser ECD deployment.  Since Gray's arrest, Deputy Rowlan has signed an affidavit swearing and affirming that he spark-tested his Taser ECD before the buy-bust and that his Taser ECD functioned properly at all times.  See Record Document 17, Ex. 1 at 2.  Deputy Rowlan also stated in his affidavit that the Taser ECD "appeared to cause Gray to experience involuntary muscle contractions and to impair his motor skills, which is exactly what I expected the electrical current to cause, and which was my purpose for deploying the [Taser]

4

ECD." Id.

Before September 3, 2010, Taser provided the Bienville Parish Sheriff's Office with "ECD Warnings, Instructions, and Information:  Law Enforcement" ("Taser's Law Enforcement Warnings").  Taser's Law Enforcement Warnings included the following statements:

> When lawfully [u]sed as directed, ECDs are designed in probe-deployment mode to temporarily incapacitate a person from a safer distance than some other force options, while reducing the likelihood of death or serious injury.  Any use of force, physical exertion, capture, control, restraint, or incapacitation involves risks that a person may get hurt or die.
>
> . . .
>
> **Neurocardiogenic Response (Fainting).**  A person may experience an exaggerated response to an ECD exposure, or threatened exposure, which may result in a person fainting or fall with possible secondary injury.
>
> . . .
>
> **Muscle Contraction or Strain-Related Injury.**  ECDs can cause strong or moderate muscle contractions that may result in physical exertion, athletic, or sport-type injury, including, but not limited to, injury such as hernia, rupture, dislocation, tear, or other injury to soft tissue, organ, muscle, tendon, ligament, nerve, bone, or joint. Fracture to bone, including compression fracture to vertebrae, may occur. These injuries may be more serious and more likely to occur in people with pre-existing injuries, conditions or special susceptibilities, which include but are not limited to, known or unknown:

pregnancy; osteopenia; osteoporosis; spinal injury; or previous muscle, disc, ligament, joint, bone, or tendon damage or surgery. Such injuries may also occur when a person reacts to the ECD deployment or discharge by making a rapid movement.

. . .

**Stress and Pain.**   The ECD can cause temporary discomfort, pain, stress, panic, or startle which may be injurious to some people. Anticipation of ECD exposure can cause stress, trepidation, panic, startle, or fear, which may also be injurious to some people.

. . .

**Scarring.** Use of an ECD may cause irritation, puncture, mark, abrasion, rash, burn, keloid, or other scarring that may be permanent. This risk may be increased when using the M26 or X26 ECD in drive-stun mode with the cartridge removed or the X3 ECD in drive-stun mode due to the multiple sets of electrical contacts. The nature and severity of these effects depends on the area of exposure and method of application, individual susceptibility, and other circumstances surrounding ECD [u]se, exposure and after care.

Record Document 17, Ex. 14 at 2, 4-5.

## B.      Procedural History.

On September 2, 2011, Gray filed suit, pro se, in the Second Judicial District

Court in and for the Parish of Bienville, Louisiana, against three Bienville Parish

sheriff's deputies, the Bienville Parish sheriff, Taser, and Advanced Emergency

Medical Service.[2]  Gray, who is now an inmate in the Jackson Parish Correctional Center, alleged that he was subjected to excessive force following his drug arrest when the Taser was applied multiple times and without cause.  Gray asserted a products liability cause of action against Taser.  Gray alleged that the Taser ECD "caused multiple burn marks on the body of Plaintiff Gray and caused nerve damage."  Record Document 1.  Gray also alleged that he was "rendered unconscious" by the Taser ECD.  Id.  On October 7, 2011, the defendants filed a Notice of Removal and jointly removed Gray's lawsuit to this court.  Thereafter, Taser filed the instant motion for summary judgment, seeking dismissal of Gray's claims against it pursuant to the Louisiana Products Liability Act ("LPLA").[3]  Gray has not responded to Taser's motion for summary judgment.[4]

_____

[2]Gray is self-represented, but the complaint he filed in state court (using a federal court caption) appears to have been prepared with the assistance of counsel.

[3]The remaining defendants have also filed motions for summary judgment, which will each be addressed separately by the court.  See Record Documents 13 and 15.

[4]On December 28, 2011, Taser sent a package to Gray which included interrogatories, requests for production, requests for admission and seven releases to allow Taser to obtain Gray's records.  On January 10, 2012, Gray signed six of the seven releases and returned them to defense counsel.  Gray, however, did not respond to any of the requests for admission propounded by Taser.

Taser has also filed a motion to compel with respect to written discovery it served on Gray on December 29, 2011.  The motion to compel was granted and Gray was ordered to serve full and complete responses to the interrogatories and requests for production no later than March 16, 2012.  Gray failed to comply with

## II. ANALYSIS

### A.   Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7]   Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).   "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).   If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine

---

this deadline.   In addition, Gray was deemed by law to have admitted the matters in the requests for admission when he did not timely serve a written answer or objection, as Federal Rule of Civil Procedure 36 provides that a request for admission is admitted unless the party to whom the request was served answers or objects to the request within thirty days. See Record Document 19.   Federal Rule of Civil Procedure 36(b) further provides, in pertinent part, that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."

[7]The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis.  Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

8

[dispute] for trial." <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. <u>See</u> <u>Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).

**B.  Gray's Failure To Respond To Taser's Motion.**

Gray was served a copy of the motion for summary judgment by Taser on February 17, 2012. <u>See</u> Record Document 17. To date, Gray has not responded. Local Rule 7.5W requires a respondent opposing a motion to "file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 21 days after service of the motion." Gray failed to oppose the motion for summary judgment within the required twenty-one day period. Federal Rule of Civil Procedure 56 states the following:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond,

9

summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

## C.    The LPLA.

The LPLA "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. R.S. 9:2800.52; Evans v. Ford Motor Co., 484 F.3d 329, 334-35 (5th Cir. 2007); Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 261-62 (5th Cir. 2002).  Thus, Gray may not recover from Taser for damage caused by a product on the basis of any theory of liability not set forth in the LPLA.

In order to maintain a successful action under the LPLA, Gray must establish: (1) that Taser is a manufacturer of the product; (2) that his damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that his damage arose from a reasonably anticipated use of the product.  See La. R.S. 9:2800.54(A).  Gray may prove that the product is unreasonably dangerous in construction or composition, in design, because of an inadequate warning, or because it does not conform to an express warranty of the manufacturer about the product.  See La. R.S. 9:2800.54(B) and (D).  "Defects are not presumed to be present by the mere occurrence of an accident."  Spott v. Otis Elevator Co., 601 So.2d 1355, 1364 (La. 1992) (citation omitted).  Gray alleges that the Taser ECD is unreasonably dangerous because of

10

an inadequate warning.  To maintain a failure to warn or inadequate warning claim under the LPLA, Gray must prove that, at the time the product left the manufacturer's control, "the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its dangers to users and handlers of the product." Stahl, 283 F.3d at 261 (quoting La. R.S. 9:2800.57).

Gray bears the burden of proof on each of the elements of his claims. See La. R.S. 9:2800.54(D); Caboni v. Gen. Motors Corp., 398 F.3d 357, 361 (5th Cir. 2005).  Thus, the defendants were not required to submit evidentiary documents to support their motions, but needed only point to the absence of evidence supporting Gray's claims. See Latimer v. Smithkline & French Labs., 919 F.2d 301, 303 (5th Cir. 1990).

As previously mentioned, pursuant to Federal Rule of Civil Procedure 36(a), Taser's requests for admissions have been deemed admitted.  The requests establish: (1) that Gray cannot identify a specific defect in the Taser ECD design; (2) Gray cannot identify a specific defect in the Taser ECD warnings; (3) no defect in the warnings of the Taser ECD contributed to or caused Gray's alleged injuries; (4) Gray has no evidence that Taser failed to comply with applicable industry standards; (5) Taser ECD's labeling was sufficient at the time of the incident; and

11

(6) Taser ECD's warnings were sufficient at the time of the incident.  In light of these admissions, Gray cannot satisfy his burden of proving that (1) there is a characteristic of the product that made it "unreasonably dangerous"; (2) Taser failed to provide an adequate warning; and (3) the damage to Gray was proximately caused by this characteristic of the product.  Therefore, Taser is entitled to summary judgment on this basis alone.

However, even had the requests for admission not been deemed admitted, Taser is nonetheless entitled to summary judgment.  Gray has failed to produce any evidence of physical injury, other than the allegations of such contained in his complaint.  Even if Gray sustained any physical injury, he has failed to produce any evidence that Taser's warnings were inadequate.  As detailed previously, Taser's warnings specifically advised that Taser ECD use involved a degree of risk that someone could get hurt or that the Taser ECD could cause injury.  See Record Document 17, Ex. 14.  Gray alleged in his complaint that he was "rendered unconscious" by the Taser ECD.  However, he has produced no evidence that he lost consciousness and the summary judgment evidence that has been produced by Taser indicates that Gray did not lose consciousness at any time.  See Record Document 17, Exs. 1, 2, 3 and 4 (affidavits of deputies at the scene).  Paramedic Maxwell also signed an affidavit confirming that Gray's only initial complaint was

shortness of breath and the Advanced Emergency Medical Services report makes no mention of loss of consciousness.  Regardless, Taser ECD's warnings included a section regarding fainting.

Gray also alleged that he sustained permanent nerve damage.  Again, Gray has not produced any evidence in support of his allegation.  Paramedic Maxwell's affidavit also provides that Gray was breathing normally and told him that he was "doing fine" during his examination.  Regardless, Taser ECD's warnings also contain a section regarding muscle contraction or strain-related injury which mentions injury to nerves.

Gray further alleged that the Taser ECD deployment left burn marks.  As with his other complaints, Gray has produced no evidence of this.  Again, however, Taser's Law Enforcement Warnings contain a section regarding scarring and indicate that a burn may occur and that other scarring may be permanent.  Gray has not suggested any alternative warnings and has not argued what warnings other than these should have been given.

Gray has failed to come forward with any evidence whatsoever.  The record is devoid of any evidence concerning whether the Taser ECD was "unreasonably dangerous" as defined under the LPLA.  As the Fifth Circuit has noted, Louisiana law does not allow a fact finder to presume a characteristic of a product is

13

unreasonably dangerous solely from the fact that an injury occurred.  See Grenier v. Med. Eng'g Corp., 243 F.3d 200, 205 (5th Cir. 2001).  Consequently, this court finds that "there has been a 'complete failure of proof concerning an essential element'" of Gray's claim.  Stahl, 283 F.3d at 263 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986)).  This court finds that there is no evidence to support a finding of liability on the part of Taser for failure to warn.

### III.  CONCLUSION

Based on the foregoing, Gray's claims against Taser do not pass muster.  Accordingly, the motion for summary judgment filed by Taser is **GRANTED** and all claims made by Gray against Taser are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this _30th_ day of March, 2012.

_____
JUDGE TOM STAGG