RECEIVED

APR 1 7 2012

TONY R. MOORE, CLERK
BY_____
        DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

_____

ELLIOTT T. GRAY

versus

CIVIL ACTION NO. 11-1802
JUDGE TOM STAGG

TASER INTERNATIONAL, INC.,
BIENVILLE PARISH SHERIFF, CLINT
SMITH, MIKE ROWLAN AND
C.R. DAVIS

_____

## MEMORANDUM RULING

Before the court is an unopposed motion for summary judgment filed by one of the defendants, Advanced Emergency Medical Service ("AEMS"), in the above-captioned matter.  See Record Document 13.  For the reasons set forth below, AEMS's motion for summary judgment is **GRANTED**.

# I. BACKGROUND

**A.    Facts.**[1]

In September of 2010, Elliott T. Gray ("Gray") was a convicted felon who was out of jail on parole and who had several outstanding warrants for his arrest. For nearly ten months before September 3, 2010, deputies with the Bienville Parish Sheriff's Office investigated Gray's involvement in the distribution of illegal drugs in Bienville Parish. Deputies obtained the assistance of a cooperating individual and arranged for an undercover officer, Deputy Mike Rowlan ("Deputy Rowlan"), to purchase six hundred dollars worth of cocaine and prescription narcotics from Gray ("the buy-bust"). The confidential informant warned Deputy Rowlan that Gray was armed with a 9 millimeter semi-automatic pistol and that Gray would run from police and resist arrest. In light of this information, Deputy Rowlan was equipped with a Taser X26 Electronic Control Device ("Taser ECD"). An arrest

---

[1]Local Civil Rule 56.2 of the Uniform District Court Rules requires that "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." The rule further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." The plaintiff did not controvert the statement of material facts filed by AEMS. Thus, all material facts set forth in AEMS's statement have been deemed admitted, for purposes of this motion, and the fact section of this opinion is drawn largely from AEMS's filing per Local Rule 56.2.

team, consisting of several officers, was positioned out of sight.

On September 3, 2010, at approximately 2:00 a.m., Gray arrived for the buy-bust in the front passenger seat of a car driven by Kristen Lard. The driver stopped the car and turned off the lights, but kept the motor running. Deputy Rowlan approached Gray's front passenger window, and Gray asked Deputy Rowlan if he had the money. Deputy Rowlan responded "yes" and asked Gray if he had the cocaine. When Gray reached to his left, toward the center console of the car, Deputy Rowlan unholstered his Taser ECD, pointed it at Gray, told Gray he was "under arrest," and ordered Gray to show his hands. When Gray refused to comply with that order, Deputy Rowlan deployed his Taser ECD. Both Taser ECD probes deployed properly. One probe attached to Gray's right upper arm and the other probe attached to his right chest area. Deputy Rowlan allowed his Taser ECD to cycle for five seconds. When the five second cycle ended, Gray tried again to reach toward the car console, instead of showing his hands. Deputy Rowlan again pulled the trigger of his Taser ECD, allowing it to cycle for another five seconds. During that five second cycle, the Taser ECD functioned properly and other law enforcement personnel were able to reach Gray and get him under control. When the arrest team removed Gray from the car, Deputy Rowlan released the spent cartridge of his Taser ECD and dropped it to the ground. Deputy Rowlan did not

3

deploy his Taser ECD again.

After his arrest, Gray complained about being short of breath and feeling like he was going to pass out. The dispatcher was contacted and an ambulance from AEMS arrived a short time later. When the paramedics arrived, Gray repeated his initial complaint about shortness of breath to Paramedic Joshua C. Maxwell ("Paramedic Maxwell"). Paramedic Maxwell examined Gray and removed the two ECD probes. Gray was breathing normally and had normal vital signs. He did not lose consciousness at any time. Gray told Paramedic Maxwell that he was doing fine, that he had no complicating medical history, and that he did not need medical attention or to be taken to the hospital. Paramedic Maxwell determined that Gray did not need any additional first aid or medical treatment and medically cleared Gray to be transported to jail.

Gray was then transported to jail and booked in Bienville Parish. He was later transported to Claiborne Parish Detention Center, where he was booked and held. Gray did not have any medical complaints and did not request any medical treatment during booking at the Bienville Parish Jail or at the Claiborne Parish Detention Center. Afterwards, during his incarceration at the Claiborne Parish Detention Center, Gray did not have any medical complaints and did not request any medical treatment.

4

## B.    Procedural History.

On September 2, 2011, Gray filed suit, pro se, in the Second Judicial District Court in and for the Parish of Bienville, Louisiana, against three Bienville Parish sheriff's deputies, the Bienville Parish sheriff, Taser International, Inc., and AEMS.[2] Gray, who is now an inmate in the Jackson Parish Correctional Center, alleged that he was subjected to excessive force following his drug arrest when the Taser was applied multiple times and without cause.  Gray claimed that AEMS conspired to deny him access to necessary medical care, in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).  Gray alleged that following his arrest, he was "in obvious need of medical care for a serious medical condition" and that under Louisiana Civil Code articles 2315, 2323 and 2324, the deputies and AEMS "knew or should have known of Plaintiff's injury" but negligently failed to provide reasonably adequate medical care "such as providing pain relief, transport to a hospital or doctor, or provide accommodation for plaintiff's injury."  Record Document 1.  On October 7, 2011, the defendants filed a Notice of Removal and jointly removed Gray's lawsuit to this court.  Thereafter, AEMS filed the instant motion for summary judgment, seeking

_____

[2]Gray is self-represented, but the complaint he filed in state court (using a federal court caption) appears to have been prepared with the assistance of counsel.

dismissal of Gray's claims against it.[3]  Gray has not responded to AEMS's motion for summary judgment.

## II. ANALYSIS

**A.   Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.

---

[3]The remaining defendants have also filed motions for summary judgment, which will each be addressed separately by the court.  See Record Documents 15 and 17.

[4]The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis.  Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).  The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment.  Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Gray's Failure To Respond To The Motion.**

Gray was served a copy of the motion for summary judgment by AEMS on February 16, 2011.  See Record Document 13.  To date, Gray has not responded. Local Rule 7.5W requires a respondent opposing a motion to "file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 21 days after service of the motion."  Gray failed to oppose the motion for summary judgment within the required twenty-one day period. Federal Rule of Civil Procedure 56 states the following:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

7

Fed. R. Civ. P. 56(e)(2).

**C.    State Actor.**

Gray's claims against AEMS include a claim pursuant to 42 U.S.C. § 1983.  To state a claim under section 1983, Gray must allege that a state actor has violated "a right secured by the Constitution and laws of the United States." West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988) (citation omitted).  Accordingly, at issue is whether AEMS was acting "under color of state law" and whether "the alleged infringement of federal rights [is] fairly attributable to the State." Cornish v. Corr. Servs. Corp., 402 F.3d 545, 549 (5th Cir. 2005).  "Deciding whether a deprivation of a protected right is fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains.'" Id. at 550 (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 51, 119 S. Ct. 977, 985 (1999)).

The specific conduct alleged in this case is the alleged failure to provide appropriate medical care.  Not once does Gray make an argument that AEMS was acting "under the color of state law", nor does he allege any facts that AEMS's conduct was attributable to the state.  AEMS simply responded to a call from the Bienville Parish Sheriff's Office.  No state actor exercised control over AEMS. Therefore, this court finds that AEMS is not a state actor.

Even though this court has concluded that AEMS is not a state actor, Gray

8

could still prove liability under section 1983 by showing that AEMS engaged in a conspiracy with a state actor to violate his constitutional rights.  See Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir. 1994).  To be actionable, however, the private and the public actor must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated.  See id.  Gray must "allege specific facts to show an agreement." Priester v. Lowndes County, 354 F.3d 414, 421 (5th Cir. 2004).  Gray has not done so.  Thus, his section 1983 claim must be dismissed.

**D.     Section 1985.**

Gray also brings a claim pursuant to 42 U.S.C. § 1985(3).  Section 1985(3) prohibits conspiracies to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws on the basis of race.  See Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 1798 (1971).  "[T]o come within the ambit of section 1985(3), a complaint must allege:  (1) a conspiracy of two or more persons; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or deprived of any right or privilege of a citizen of the United States." Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 757

9

(5th Cir. 1987) (citing <u>United Bhd. of Carpenters & Joiners of Am., Local 610 v.</u> <u>Scott,</u> 463 U.S. 825, 828-29, 103 S. Ct. 3352, 3354-56 (1983)).

Gray has failed to allege facts that suggest any agreement among the defendants to deny him of any rights covered by section 1985(3). <u>See</u> <u>Green v. State</u> <u>Bar of Tex.,</u> 27 F.3d 1083, 1089 (5th Cir. 1994) (explaining that an "agreement among the parties" is a necessary element of a section 1985(3) claim). The assertions that AEMS entered into an agreement are unsupported by specific facts and thus do not create a genuine issue for trial. <u>See</u> <u>Clark v. America's Favorite Chicken Co.,</u> 110 F.3d 295, 297 (5th Cir. 1997).  Furthermore, "[i]t is well-established in this circuit that the only conspiracies actionable under section 1985(3) are those motivated by racial animus," and Gray has alleged no facts to suggest racial animus. <u>Deubert,</u> 820 F.2d at 757.  Accordingly, the claim pursuant to section 1985(3) must be dismissed.

**E.    Deliberate Indifference.**

Had the court concluded that AEMS was a state actor, Gray would have been required to demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the Constitution to prevail under section 1983.  Although the Eighth Amendment does not mandate a specific level of care, it imposes a duty to ensure that inmates receive adequate medical care. <u>See</u> <u>Easter v. Powell,</u> 467 F.3d 459, 463 (5th Cir. 2006).  To meet his burden, Gray must demonstrate that AEMS

10

was deliberately indifferent to his serious medical needs.   See id.   Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.   See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 291-92 (1976).   Disagreement with the diagnostic measures or methods of treatment afforded does not state a constitutional claim for indifference to medical needs.   See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Deliberate indifference is "an extremely high standard to meet."   Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).   Gray must show that (1) the defendants were aware of facts from which an inference of excessive risk to his health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed.   See Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994).   A showing of deliberate indifference requires the plaintiff to submit evidence that AEMS "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."   Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

AEMS was not deliberately indifferent to Gray's serious medical needs. AEMS did not refuse to treat Gray, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton

11

disregard for any serious medical needs.  See id.  Rather, AEMS treated Gray's

complaints and responded to his assertions that he was "fine" and that he did not need

any additional medical care.  Such actions do not constitute an unnecessary and

wanton infliction of pain repugnant to the conscience of mankind.  See Estelle, 429

U.S. at 106, 97 S. Ct. at 291-92.  Accordingly, the claims against AEMS must be

dismissed.

**F.    Medical Malpractice.**

Gray alleges that AEMS "knew or should have known" of his injury but

negligently failed to provide reasonably adequate medical care "such as providing

pain relief, transport to a hospital or doctor, or provide accommodation for Plaintiff's

injury."  Record Document 1.  "In general, any conduct by a health care provider

complained of by a patient is properly within the scope of the [Louisiana Medical

Malpractice] Act if it can reasonably be said that it comes within the definitions of

the Act, even though there are alternative theories of liability."  Rogers v. Synthes,

Ltd., 626 So.2d 775, 777 (La. App. 2d Cir. 1993).  Medical malpractice is defined by

Louisiana Revised Statute 40:1299.41(A)(8) as:

> any unintentional tort or breach of contract based on health
> care or professional services rendered, or which should
> have been rendered, by a health care provider, to a patient,
> including failure to render services timely and the handling
> of a patient, including loading and unloading of a patient,
> and also includes all legal responsibility of a health care

12

provider arising from acts or omissions in the training or
supervision of health care providers. . . .

La. R.S. 40:1299.41(A)(8).[5]  Louisiana Revised Statute 40:1299.41(A)(7) sets forth

the duty of health care providers:

> "Tort" means any breach of duty or any negligent act or
> omission proximately causing injury or damage to another.
> The standard of care required of every health care provider,
> except a hospital, in rendering professional services or
> health care to a patient, shall be to exercise that degree of
> skill ordinarily employed, under similar circumstances, by
> the members of his profession in good standing in the same
> community or locality, and to use reasonable care and
> diligence, along with his best judgment, in the application
> of his skill.

La. R.S. 40:1299.41(A)(7).  AEMS, as an ambulance service, was therefore required

to exercise that degree of skill ordinarily employed under similar circumstances by

others in the profession in the same community or locality, and also to use reasonable

care, diligence and judgment.  See Alphonse v. Acadian Ambulance Servs., Inc., 844

So.2d 294, 299 (La. App. 1st Cir. 2003). "Thus, in suits alleging medical malpractice,

---

[5]The Louisiana Medical Malpractice Act defines "health care" as "any act or
treatment performed or furnished, or which should have been performed or furnished,
by any health care provider for, to, or on behalf of a patient during the patient's
medical care, treatment, or confinement. . . ." La. R.S. 40:1299.41(A)(9). A "health
care provider" is defined as a "corporation, facility, or institution licensed or certified
by this state to provide health care or professional services as a physician, hospital,
. . . ambulance service, . . . or agent thereof acting in the course and scope of his
employment." La. R.S. 40:1299.41(A)(10).

the plaintiff must prove the applicable standard of care, the breach of that standard, and that the substandard care caused an injury that the plaintiff otherwise would not have suffered." Id. (citing Pfiffner v. Correa, 643 So.2d 1228, 1233 (La. 1994)).[6] "Expert testimony is generally required, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." Johnson v. Morehouse Gen. Hosp., 63 So.3d 87, 96 (La. 2011) (citation omitted).

Gray has failed to establish any of the required elements of a medical malpractice claim. His assertions are unsupported by specific facts and thus do not create a genuine issue for trial. See Clark, 110 F.3d at 297. Thus, Gray's claim of medical malpractice must fail.

### III. CONCLUSION

Based on the foregoing, Gray's claims against AEMS do not pass muster. Accordingly, the motion for summary judgment filed by AEMS is **GRANTED** and all claims made by Gray against AEMS are **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

---

[6]Gray's claim of medical malpractice based on AEMS's negligence is not governed by Louisiana Revised Statute 9:2794(A), as incorrectly argued by AEMS. The case cited by AEMS for this proposition applied this statute to a nurse, not an ambulance service. The court was unable to locate any cases which stood for the proposition that the statute cited by AEMS applies to an ambulance service.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this _17th_ day of April, 2012.

JUDGE TOM STAGG