RECEIVED

APR 17 2012

TONY R. MOORE, CLERK
BY _____
         DEPUTY

## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

ELLIOTT T. GRAY

versus                                           CIVIL ACTION NO. 11-1802
                                                 JUDGE TOM STAGG

TASER INTERNATIONAL, INC.,
BIENVILLE PARISH SHERIFF, CLINT
SMITH, MIKE ROWLAN AND
C.R. DAVIS

_____

## <u>MEMORANDUM RULING</u>

Before the court is an unopposed motion for summary judgment filed by the

remaining defendants in the case, the Bienville Parish Sheriff, Clint Smith, Mike

Rowlan and C.R. Davis (hereinafter collectively referred to as "the defendants").

<u>See</u> Record Document 15.  For the reasons set forth below, the defendants' motion

for summary judgment is **GRANTED**.

# I.  BACKGROUND

## A.    Facts.[1]

In September of 2010, Elliott T. Gray ("Gray") was a convicted felon who was out of jail on parole and who had several outstanding warrants for his arrest. For nearly ten months prior, deputies with the Bienville Parish Sheriff's Office investigated Gray's involvement in the distribution of illegal drugs in Bienville Parish.[2] Deputies obtained the assistance of a cooperating individual and arranged for an undercover officer, Deputy Mike Rowlan ("Deputy Rowlan"), to purchase six hundred dollars worth of cocaine and prescription narcotics from Gray. The confidential informant warned Deputy Rowlan that Gray was armed with a 9 millimeter semi-automatic pistol and that Gray would run from police and resist arrest. In light of this information, Deputy Rowlan was equipped with a Taser X26

---

[1]Local Civil Rule 56.2 of the Uniform District Court Rules requires that "[e]ach copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." The rule further provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." The plaintiff did not controvert the statement of material facts filed by the defendants. Thus, all material facts set forth in the defendants' statement have been deemed admitted, for purposes of this motion, and the fact section of this opinion is drawn largely from the defendants' filing per Local Rule 56.2.

[2]During the investigation, Gray had sold narcotics to undercover officers, arrest warrants had been issued, and Gray had escaped at least twice when deputies had attempted to arrest him.

Electronic Control Device ("Taser ECD"). An arrest team consisting of several officers (including the defendants) was positioned out of sight around the fire station and another deputy was located in his patrol unit a short distance off of the main road to the south of the fire station in case Gray attempted to flee in his vehicle.

On September 3, 2010, at approximately 2:00 a.m., Gray arrived at the fire station in the front passenger seat of a car driven by Kristen Lard. The driver stopped the car and turned off the lights, but kept the motor running. Deputy Rowlan approached Gray's front passenger window, and Gray asked Deputy Rowlan if he had the money. Deputy Rowlan responded "yes" and asked Gray if he had the cocaine. When Gray reached to his left, toward the center console of the car, Deputy Rowlan unholstered his Taser ECD, pointed it at Gray, told Gray he was "under arrest," and ordered Gray to show his hands. When Gray refused to comply with that order, Deputy Rowlan deployed his Taser ECD. Both Taser ECD probes deployed properly. One probe attached to Gray's right upper arm and the other probe attached to his right chest area. Deputy Rowlan allowed his Taser ECD to cycle for five seconds. When the five second cycle ended, Gray tried again to reach toward the car console, instead of showing his hands. Deputy Rowlan again pulled the trigger of his Taser ECD, allowing it to cycle for another five seconds.

3

During that five second cycle, the Taser ECD functioned properly and other law enforcement personnel were able to reach Gray and get him under control.  When the arrest team removed Gray from the car, Deputy Rowlan released the spent cartridge of his Taser ECD and dropped it to the ground.  Deputy Rowlan did not deploy his Taser ECD again.

After his arrest, Gray complained about being short of breath and feeling like he was going to pass out.  The dispatcher was contacted and an ambulance from Advanced Emergency Medical Service ("AEMS") arrived a short time later.  When the paramedics arrived, Gray repeated his initial complaint about shortness of breath to one of the paramedics.  The paramedic examined Gray and removed the two ECD probes.  Gray was breathing normally and had normal vital signs.  He did not lose consciousness at any time.  Gray told the paramedic that he was doing fine, that he had no complicating medical history, and that he did not need medical attention or to be taken to the hospital.  The paramedic determined that Gray did not need any additional first aid or medical treatment and medically cleared Gray to be transported to jail.

Gray was then transported to jail and booked in Bienville Parish.  He was later transported to Claiborne Parish Detention Center, where he was booked and held.  Gray did not have any medical complaints and did not request any medical

4

treatment during booking at the Bienville Parish Jail or at the Claiborne Parish Detention Center.  Afterwards, during his incarceration at the Claiborne Parish Detention Center, Gray did not have any medical complaints and did not request any medical treatment.

**B.    Procedural History.**

On September 2, 2011, Gray filed suit, pro se, in the Second Judicial District Court in and for the Parish of Bienville, Louisiana, against three Bienville Parish sheriff's deputies (Smith, Rowlan and Davis), the Bienville Parish sheriff, Taser International, Inc., and AEMS.[3]  Gray, who is now an inmate in the Jackson Parish Correctional Center, alleged that his constitutional rights were violated when he was subjected to excessive force and denied medical care following his drug arrest when the Taser was applied multiple times and without cause.[4]  See Record Document 1. On October 7, 2011, the defendants filed a Notice of Removal and jointly removed Gray's lawsuit to this court.  Thereafter, the defendants filed the instant motion for summary judgment, seeking dismissal of Gray's claims against them.[5]  Gray has not

---

[3]Gray is self-represented, but the complaint he filed in state court (using a federal court caption) appears to have been prepared with the assistance of counsel.

[4]Gray also alleged various state law claims.

[5]The remaining defendants also filed motions for summary judgment, which have been addressed separately by the court.  See Record Documents 13 and 17.

responded to the defendants' motion for summary judgment.

## II. ANALYSIS

**A.      Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]   Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).   "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial."  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.

---

[6]The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis.  Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

2005).  The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment.  <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Gray's Failure To Respond To The Motion.**

Gray was served a copy of the motion for summary judgment by the defendants on February 17, 2011.  <u>See</u> Record Document 15.  To date, Gray has not responded.  Local Rule 7.5W requires a respondent opposing a motion to "file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 21 days after service of the motion."  Gray failed to oppose the motion for summary judgment within the required twenty-one day period.  Federal Rule of Civil Procedure 56 states the following:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

**C.     Gray's Federal Law Claims.**

Title 42, United States Code, section 1983 provides the remedy for

7

constitutional violations of the sort alleged by Gray.  Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  The court will analyze Gray's claims separately, beginning with excessive use of force.

### 1.    Excessive Use Of Force.

Gray alleges excessive use of force by the deputies in violation of his Fourth and Fourteenth Amendment rights.  The deputies claim qualified immunity.  See Record Document 15.

Qualified immunity shields government officials from liability in their performance of discretionary functions, unless their conduct violated a clearly established constitutional right.  See Ontiveros v. City of Rosenberg, Tex., 564 F.3d 379, 382 (5th Cir. 2009).  "Once raised, a plaintiff has the burden to rebut the qualified immunity defense . . . .  We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."  Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 380 (5th Cir. 2005).  The qualified immunity inquiry consists of two prongs: "(1) whether the facts alleged or shown by the plaintiff made out a violation of a

constitutional right, and (2) whether that right was 'clearly established' at the time of the defendant's alleged misconduct." Ontiveros, 564 F.3d at 382.

The Fourth Amendment right to be free from excessive force was clearly established at the time of Gray's arrest. See Deville v. Marcantel, 567 F.3d 156, 169 (5th Cir. 2009). Thus, the question for the court is whether, considering the facts in the light most favorable to Gray, he has demonstrated facts sufficient to establish a violation of this Fourth Amendment right.

To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros, 564 F.3d at 382. The "reasonableness" of the officers' use of force is an objective determination that "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989)). The question is whether the officers' conduct is "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. In determining whether the force was reasonable, the court may consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight." <u>Deville</u>, 567 F.3d at 167 (quoting <u>Graham</u>, 490 U.S. at 396, 109 S. Ct. at 1872).

Gray fails to satisfy the first prong, as he has not produced any evidence of an injury. In fact, the evidence before the court indicates that an injury was not sustained. Furthermore, Gray fails to show that his injury resulted from excessive force that was clearly unreasonable. The officers were presented with a suspect who had been known to have a propensity to attempt to escape and who was potentially armed. In addition, when ordered to show his hands, Gray instead began to reach for the center console of the car instead of complying with the orders. The use of force was tailored to Gray's actions, beginning first with verbal commands and the ultimate use of a taser. After securing Gray, the officers acknowledged Gray's complaints of shortness of breath and called for medical assistance. The use of force was "objectively reasonable" "in light of the facts and circumstances confronting them." <u>Ontiveros</u>, 564 F.3d at 382.

The court finds that there is no genuine dispute of material fact regarding the reasonableness of the officers' use of force. Thus, Gray fails to demonstrate a violation of his Fourth Amendment rights, and the defendants are entitled to qualified immunity. The defendants' motion for summary judgment is granted with respect to Gray's claim of excessive use of force.

## 2. Denial Of Medical Care.

To prevail under section 1983, Gray must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the Constitution. Although the Eighth Amendment does not mandate a specific level of care, it imposes a duty on prison officials to ensure that inmates receive adequate medical care. See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006). To meet his burden, Gray must demonstrate that the defendants were deliberately indifferent to his serious medical needs. See id. Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 291-92 (1976). Disagreement with the diagnostic measures or methods of treatment afforded does not state a constitutional claim for indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

Deliberate indifference is "an extremely high standard to meet." Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001). Gray must show that (1) the defendants were aware of facts from which an inference of excessive risk to his health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. See Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994). A showing of deliberate indifference requires Gray to submit

11

evidence that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006).

The defendants were not deliberately indifferent to Gray's serious medical needs. The defendants did not refuse to treat Gray, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Rather, a call was placed for medical help and AEMS treated Gray's complaints and responded to his assertions that he was "fine" and that he did not need any additional medical care. Such actions do not constitute an unnecessary and wanton infliction of pain repugnant to the conscience of mankind. See Estelle, 429 U.S. at 106, 97 S. Ct. at 291-92. Accordingly, this claim against the defendants must be dismissed.

**D.    Liability Of The Sheriff.**

"Supervisory officials cannot be held liable under section 1983 for the actions of subordinates . . . on any theory of vicarious or respondeat superior liability. Plaintiffs must show that the conduct of the supervisors denied [the plaintiff] his constitutional rights." Estate of Davis, 406 F.3d at 381. Gray does not allege and the record does not show that the Sheriff was present during the incident that gave

12

rise to this action. Therefore, to recover on this claim, Gray must show that he was injured by some unconstitutional policy or custom for which the Sheriff is responsible.

An action against a governmental officer in his "official capacity" is equivalent to a suit against the governmental entity and "victory in such an official-capacity suit imposes liability on the entity that the officer represents." Burge v. Parish of St. Tammany, 187 F.3d 452, 468 (5th Cir. 1999) (quoting McMillian v. Monroe Cnty., Ala., 520 U.S. 781, 785 n.2, 117 S. Ct. 1734 (1997)). A municipality is not liable under section 1983 on the theory of respondeat superior, but instead only for acts that are directly attributable to it "through some official action or imprimatur." Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). A plaintiff must not only identify a constitutional violation, but also that an official policy promulgated by the municipality's policymaker was the "moving force" behind the injury alleged. See id. "The official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" James v. Harris Cnty., 577 F.3d 612, 617 (5th Cir. 2009) (citation omitted). In this case, there is no evidence whatsoever to establish an unconstitutional policy or custom by the Sheriff.

13

Therefore, this claim must be dismissed.

**E.      State Law And Other Remaining Claims.**

The defendants assert that Gray's state law claims mirror his federal law claims and should be dismissed. This assertion is true as to Gray's claim of excessive force. See <u>Winston v. City of Shreveport</u>, 390 F. App'x 379 (5th Cir. 2010); <u>Kyle v. City of New Orleans</u>, 353 So.2d 969, 972-73 (La. 1977). However, the defendants did not address the remainder of state law claims that were asserted in Gray's complaint.[7] The defendants did summarily state that "summary judgment should be granted in their favor" and that "this matter should be dismissed." Record Document 15. Gray did not respond to the motion and point to any of these claims as inappropriate for summary judgment. In light of the Fifth Circuit's opinion in <u>Keenan v. Tejeda</u>, 290 F.3d 252 (5th Cir. 2002),[8] this court will grant the defendant's motion for summary

---

[7]The defendants also failed to address other federal claims alleged in Gray's complaint.

[8]The plaintiffs in <u>Keenan</u> included due process and equal protection claims in their complaint. The claims were not, however, mentioned or argued in the defendants' motion for summary judgment, in the plaintiffs' opposition to the motion, or in the district court's opinion granting summary judgment. Nor did the plaintiffs file a motion for reconsideration following the court's dismissal of the entire action. The plaintiffs remembered the claims on appeal, but the Fifth Circuit said they were waived. The court explained: "'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" <u>Keenan</u>, 290 F.3d at 262 (quoting <u>Grenier v. Cyanamid Plastics, Inc.</u>, 70 F.3d 667, 678 (1st Cir. 1995) (quotations and citations omitted)).

14

judgment as to these remaining claims.[9]

## III.  CONCLUSION

Based on the foregoing, Gray's claims against the defendants do not pass muster.  Accordingly, the motion for summary judgment filed by the defendants is **GRANTED** and all claims made by Gray against the defendants are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 17th day of April, 2012.

_____
JUDGE TOM STAGG

---

[9]The defendants should consider themselves cautioned that this tactic is not preferred by this court.

15